UNITED STATES, Appellee

v

TIMOTHY D. GRICE, Private First Class,

U. S. Army, Appellant

8 USCMA 166, 23 CMR 390

No. 9352

Decided July 26, 1957

*First Lieutenant William H. Carpenter* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*First Lieutenant James G. Duffy* and *First Lieutenant Arnold I. Burns* argued the cause for Appellee, United States. With them on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant Richard W. Young,* and *First Lieutenant Edward S. Nelson.*

### Opinion of the Court

HOMER FERGUSON, Judge:

The accused, despite his plea of not guilty, was convicted by general court-martial of conspiracy to commit larceny and larceny, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 USC §§ 881 and 921, respectively. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for one year. The convening authority approved the findings and the sentence, but suspended the execution of the dishonorable discharge until the accused's release from confinement or until completion of appellate review, whichever occurs later. The convening authority

ordered the unsuspended portion of the sentence executed. The board of review set aside that portion of the convening authority's action that ordered immediate execution of the sentence as violative of the provisions of Article 71 (c), Uniform Code of Military Justice, 10 USC § 871, but otherwise approved the findings of guilty and the sentence as correct in law and fact.

The sole issue presented on this appeal is whether the advice of the staff judge advocate to the convening authority in the post-trial review—wherein an allegedly incorrect standard for measuring the sufficiency of the evidence was applied—deprived the ac-

cused of his right to a legally correct review of his case at the level of the convening authority.

It is not essential to the determination of this issue that a full recital of the facts be set forth. It will suffice to say that the sole issue at trial concerned whether the accused was involved in the alleged larceny and conspiracy. Testifying in his own behalf, he denied complicity in the crimes despite the assertions of two Korean conspirators who sought to implicate him. The court-martial, however, chose to disbelieve the accused and found him guilty as charged. The staff judge advocate, in his post-trial review, after summarizing the testimony adduced in behalf of both the prosecution and the defense, advised the convening authority under the separate section heading "Sufficiency of the evidence" as follows:

"The fact that the alleged larceny occurred was not contested; the sole issue in the case was whether or not the accused was involved. This issue could be resolved only by a comparison of the credibility of the witnesses, Kang and Mike, with the credibility of the accused. *Since that issue was resolved against the accused by the court who observed the demeanor of all witnesses and heard all the evidence first-hand, the undersigned may not disagree with that decision.* There is sufficient evidence in the record of trial to sustain the findings of guilty." [Emphasis supplied.]

It is the italicized portion of this advice which gives rise to the issue presently before us. Appellate defense counsel contend that this advice of the staff judge advocate erroneously informed the convening authority that he was bound by the findings of the court-martial. The Government, on the other hand, argues that the advice cannot be construed as having informed the convening authority that he was precluded from making an independent determination of the sufficiency of the evidence.

Article 61, Uniform Code of Military Justice, 10 USC § 861, provides—with regard to general courts-martial forwarded to the convening authority pursuant to Article 60, Uniform Code of Military Justice, 10 USC § 860—that:

"The convening authority shall refer the record of each general court-martial to his staff judge advocate or legal officer, who shall submit his written opinion thereon to the convening authority."

In pursuing the advisory function set forth in Article 61, supra, it is incumbent upon the staff judge advocate to apply the same legal standards that would be employed by the convening authority in determining a given legal problem. A staff judge advocate has no command authority and no test is to be applied by him except in his capacity as legal adviser to the commander. His advice, therefore, must utilize the standards that the commander himself would use.

With regard to the convening authority's reviewing power generally, Article 64, Uniform Code of Military Justice, 10 USC § 864, provides:

"In acting on the findings and sentence of a court-martial, the convening authority may approve *only* such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law *and fact* and as he in his discretion determines should be approved." [Emphasis supplied.]

Further, the convening authority, in examining a given case for sufficiency of evidence " is empowered *to weigh evidence, judge the credibility of witnesses, and determine controverted questions of fact,* recognizing that the trial court saw and heard the witnesses. In considering the evidence, he will be guided by the principles stated in 74a and chapter XXVII. *Unless he determines that a finding of guilty was established beyond a reasonable doubt by the competent evidence of record,* he should disapprove the finding." (Emphasis supplied.) (Paragraph 87a (3), Manual for Courts-Martial, United States, 1951.) Paragraph 74a, Manual for Courts-Martial, supra, sets forth standards which guide the court-martial in "making its findings."

The staff judge advocate's function

with respect to the advice contained in the post-trial review is set forth in the Manual for Courts-Martial, supra, at paragraph 85b, and is specific on form and content:

> "The staff judge advocate or legal officer to whom a record of trial is referred for review and advice will submit a written review thereof to the convening authority. The review will include a summary of the evidence in the case, *his opinion as to the adequacy and weight of the evidence and the effect of any error or irregularity respecting the proceedings, and a specific recommendation as to the action to be taken.* Reasons for both the opinion and the recommendation will be stated. The convening authority may direct his staff judge advocate or legal officer to make a more comprehensive written review or supplementary oral or written reviews or reports." [Emphasis supplied.]

The advice given in this case is unambiguous. The staff judge advocate stated that he was bound by the findings of the court-martial on questions of fact. The convening authority, however, is not so limited and since the staff judge advocate has no authority or function but to advise his commander, we believe the advice was tantamount to informing the commander that he also was bound by the findings of the court-martial. While it is true that the convening authority should generally recognize that "the trial court saw and heard the witness" it is equally true that he is empowered and required to judge the credibility of witnesses, determine controverted questions of fact, and otherwise apply the trial level test of sufficiency rather than the more restrictive test reserved to appellate tribunals. He must be satisfied in his action that the accused is guilty *beyond a reasonable doubt.*

We stated in United States v Massey, 5 USCMA 514, 519, 18 CMR 138, that we had "assiduously sought to preserve the fairness of the post-trial review demanded by the Code, and to assure that its procedures are accomplished in the manner intended by Congress." In United States v Greenwalt, 6 USCMA 569, 20 CMR 285, when speaking of the pretrial advice of the staff judge advocate, we said:

> ". . . This is an important pretrial protection accorded to an accused, and Congress had in mind something more than adherence to an empty ritual. It placed a duty on the staff judge advocate to make an independent and informed appraisal of the evidence as a predicate for his recommendation. *His is the role of an adviser, and unless he reviews the record thoroughly and accurately, he cannot soundly advise the man who has to make the ultimate decision. Therefore, to the extent that the advice rendered by him is incomplete, ill-considered, or misleading as to any material matter, he has failed to comply with the statutory obligation which rests upon him.*" [Emphasis supplied.]

The sentiment thus expressed with regard to Article 34, Uniform Code of Military Justice, 10 USC § 834, we feel is no less applicable when we consider the staff judge advocate's duties pursuant to Article 61, supra. We disagree with the board of review's conclusion in this case that the staff judge advocate was merely saying that he personally saw no reason to disagree with the court-martial's findings. He not only has failed to fulfill his function as imposed by the Code and detailed by the Manual, but he has couched his "opinion" in terms of mandatory compliance with the court-martial's findings of facts. The staff judge advocate does not say that he doesn't disagree with the court-martial. He says specifically and unambiguously that he "may not disagree." This was error.

We are not unmindful of the fact that a convening authority may completely disregard the advice of his staff judge advocate. Paragraph 85c, Manual for Courts-Martial, supra, however, provides that the convening authority should "ordinarily" accept the opinion of a staff judge advocate on questions respecting the adequacy of the evidence. In the case at bar the convening author-

169

ity did not disregard the advice of his staff judge advocate. Our problem then resolves to this: Did there exist a fair risk that the convening authority's action was prompted by reliance upon the erroneous advice of his legal adviser? We believe such a fair risk existed. United States v Doherty, 5 USCMA 287, 17 CMR 287.

Since the staff judge advocate considered himself bound by the court-martial's findings, we conclude that the convening authority also considered himself bound. To hold otherwise would, in the language of the Greenwalt case, supra, "ignore the practicalities of the situation." In United States v Schuller, 5 USCMA 101, 17 CMR 101, we had occasion to discuss the duties of a staff judge advocate with respect to the pretrial advice and in the course of our opinion we said:

> "We recognize that, under Article 34, the convening authority, not the Staff Judge Advocate, actually makes the final decisions as to whether the expected evidence is sufficient to support the charges, and whether they should be referred to trial. . . . Our interest is in the fact that the convening authority was given an advice which purported to show a legal evaluation of the sufficiency of the evidence. If we presume regularity, we cannot doubt that his decision to refer the charges to trial was substantially influenced by the advice of his Staff Judge Advocate. Yet, that advice was not based upon any examination of the evidence. Essentially, therefore, the convening authority himself did not make a proper determination of the sufficiency of the evidence."

This reasoning applicable to the pretrial advice is equally valid with regard to the post-trial review.

In view of what we have said, we conclude that as a result of the staff judge advocate's erroneous advice, the accused has not received that legally correct review of his case at the convening authority level that he is guaranteed by the Uniform Code of Military Justice and the Manual for Courts-Martial, supra. The decision of the

**170**

board of review is reversed. In United States v Papciak, 7 USCMA 412, 22 CMR 202, we said that the officer to whom the record must be returned for corrective action in situations of this nature "should necessarily be determined by the particular facts of the case." Here, we feel it is perfectly proper to return the case to the same convening authority, who will refer the record to his staff judge advocate for further review in accordance with the principles expressed in this opinion.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

I dissent from the result reached by my associates in the opinion of the Court and, if they are branching out into the fields of staff concepts, I disassociate myself from the view that, because a legal officer does not have command responsibility, he must measure a record of trial by the standards of his commander. Such a concept overlooks entirely the relationship between the commander and his legal consultant. While the superior can set generally the manner in which he desires his counselor to perform, the former does not expect the latter to cut all the cloth by his measurements for, if he did, he would find little use for his adviser on the law. Commanders vary in their method of operation, and one convening authority may want his expert on the Code to limit his advice to legalistic concepts, leaving to the commander the responsibility of making all final decisions required by law, regulation, and customs of the service. If the commander operates in that manner, the staff judge advocate must confine his reviews within the minimum requirements of the Code and the Manual. On the other hand, a commander may operate in such a way that he may allow his legal subordinates much greater latitude and solicit help and advice on matters which go far beyond strictly legal limits. In that event, the legal expert may expand his views and offer helpful recommendations in many areas. However, regard-

less of the manner of operation used by the convening authority, it has always been my belief that, to be of any value as an adviser, a legal officer's recommendations must be based on his own judgment and not on any yardstick carved out by his immediate superior. And I believe that was the concept envisioned by Congress and the President when they enacted the Code and promulgated the Manual.

Article 61 of the Uniform Code of Military Justice, 10 USC § 861, in relevant part provides:

"The convening authority shall refer the record of each general court-martial to his staff judge advocate or legal officer, who shall submit his written opinion thereon to the convening authority."

That Article is augmented by paragraph 85*b* of the Manual for Courts-Martial, United States, 1951, which prescribes the form and content of the review. It provides as follows:

"The staff judge advocate or legal officer to whom a record of trial is referred for review and advice will submit a written review thereof to the convening authority. The review will include a summary of the evidence in the case, his opinion as to the adequacy and weight of the evidence and the effect of any error or irregularity respecting the proceedings, and a specific recommendation as to the action to be taken. Reasons for both the opinion and the recommendation will be stated. The convening authority may direct his staff judge advocate or legal officer to make a more comprehensive written review or supplementary oral or written reviews or reports."

It is to be noted that the Manual provision—which is not inconsistent with the Code—calls for █ the opinion of the legal officer on the weight and adequacy of the evidence. That requirement may call for two standards and, in arriving at a decision on evidentiary matters, a staff judge advocate ought to have some discretion in selecting the words he chooses to convey his thoughts to his superior. I believe it

entirely proper for him to say that as a matter of law the evidence is sufficient to sustain the findings, and then if he desires, to go on and say that recognizing the court saw and heard the witnesses, he could find no basis for concluding the findings were not supported as a matter of fact. So long as he gives his reasons for reaching a decision, the commander will not be misled into believing that the standards used by the lawyer must necessarily be used by him. However, if we are to hamstring all legal advisers by allowing them no latitude in their method of presentation and by being hypercritical of the tests they use, we are going to force them to abandon individualized review of records and compel commanders to request the minimum amount of information.

In the case at bar, the reporting staff officer chose one method of setting out his recommendations and the reasons underlying them, and the Court finds fault with his manner of approach. I take the opposite view, for I find nothing wrong with a staff judge advocate writing like a lawyer, using legal standards to measure the record, and freely expressing his opinion as to why he—not the convening authority—would affirm or reverse a conviction or lessen the punishment. Part of the difficulty I encounter in finding prejudice in post-trial reviews is that the words and phrases found in a staff judge advocate's review are merely advisory and they are considered by the commander as such. They seldom, if ever, reflect the thought and consideration given to the case by the officer who has the authority to act. Therefore, I see no good reason to interpret the language used with such rigidity that all common sense is forced out. Nor do I find any justification for treating the review as a verbatim transcript of all that transpires between the commander and his staff consultant. There are such things as personal conferences, and I am reasonably certain that most commanders converse frequently with their legal advisers on general court-martial convictions and that many matters not appearing in the reviews or not fully developed therein

are discussed informally. Sometimes there is unanimity of opinion between the two on both the law and the facts, while in other instances there may be disagreement on either or both; but if a legal counselor must obtain the guideposts for his review from his superior, there is little chance for an objective opinion. Perhaps I can rephrase the old adage by saying that two heads are no better than one if they are compelled to read the record with the same pair of spectacles.

Paragraph 85c of the Manual seems to support a view that differences of opinion on questions of fact and law may be anticipated. The paragraph provides as follows:

"Ordinarily, the convening authority should accept the opinion of his staff judge advocate or legal officer as to the effect of any error or irregularity respecting the proceedings, as to the adequacy of the evidence, and as to what sentence can legally be approved. However, it is within the particular province of the convening authority to weigh evidence, judge the credibility of witnesses, determine controverted questions of fact that may have been raised in the record, and to determine what legal sentence should be approved. In those unusual cases in which a convening authority is in disagreement with his staff judge advocate or legal officer as to the effect of any error or irregularity respecting the proceedings, as to the adequacy of the evidence, or as to what sentence can legally be approved, the convening authority may transmit the record of trial, with an expression of his own views and the opinion of his staff judge advocate or legal officer, to the Judge Advocate General of the armed force concerned for advice. In any case which is forwarded to the Judge Advocate General, if the convening authority takes an action different from that recommended by his staff judge advocate or legal officer, he should state the reasons for his action in a letter transmitting the record to the Judge Advocate General (91a)."

It is of particular importance to note that, while the convening authority is advised to accept the opinion of his staff judge advocate, he need not do so. It appears that the thrust of that principle is toward acceptance of the staff judge advocate's recommendations on matters of law but, significantly enough, this provision is silent as to the weight of the evidence. The converse would seem to be true in the field of facts and credibility, for in those areas the commander appears to reign supreme. Even a cursory reading of the provision will establish that it is within his particular province to weigh evidence, judge the credibilty of witnesses, and determine controverted questions of fact. No such authority is delegated to the staff officer, and the grant of that power to the convening authority is in keeping with the military concept that the commander must personally make the final decision on whether he should approve or disapprove the findings and sentence returned by a court-martial. Certainly the officer saddled with the nondelegable duty of deciding the question can, in a large measure, dictate the particular fields in which he desires to be advised. Furthermore, it should be assumed he is competent to interpret words according to their ordinary use, and when a legal adviser uses the phrase "the undersigned may not disagree with the court-martial" in his review, he is speaking about the author's limitations and not those of the addressee.

While every convicted person in the military service is entitled to a fair review, this accused is being afforded another opportunity, which may give him a more favorable result, without any real justification therefor. The improper measuring rod which is used as the vehicle for reversal is interpreted from certain language which to me states clearly a legal position which may be taken logically by any staff judge advocate. In his analysis of the sufficiency and adequacy of the evidence, this reviewing lawyer states that there is a direct dispute between the witnesses for the prosecution and the accused. He thereupon reasons that, since there is presented a question of

credibility of witnesses which the court-martial resolved against the accused, he may not disagree with that conclusion. He is not saying that the convening authority may not believe or disbelieve a witness or otherwise determine the credibility of witnesses, he is merely announcing a proposition that he, in his advisory capacity, should not do so. Perhaps he might have chosen more appropriate language or again he might have announced his disagreement with the findings of the court, but it was not incumbent upon him to do so. He does not have to disagree with the verdict of a court-martial and he is unfettered in saying he will give weight to their findings. That is a well-understood legal principle which is not foreign to military law. In that connection, it is to be remembered that the court-martial must weigh the evidence and find the accused guilty beyond a reasonable doubt and all the reviewer is saying is that so long as the sentence reaches that quantity and quality, he ought not to substitute his judgment for that of the court members. Those articles of the Code which clothe the convening authority and boards of review with fact-finding powers also admonish them to give due consideration to the fact that the court-martial saw and heard the witnesses. That is primarily a caveat that the credibility of witnesses may be determined better by those triers of fact who observed them while they were on the witness stand. Not only is that a sensible rule, but to anyone who has read a record of appeal, it is founded on logic and experience.

Unless I misunderstand the Court's holding, the denial of a fair review must arise out of the speculative conclusion that the convening authority was misled in two particulars. First, he was led to believe he did not have the authority to disagree with the findings of the court-martial. Second, he did not understand that he must conclude the evidence established guilt beyond a reasonable doubt. If that is the basis of the holding, then I submit that the foundation underlying it is supported by nothing but the rankest conjecture. If we are to trespass in that field, I would hazard a guess that every military commander with general court-martial authority has had instruction in military law and is familiar with the duties imposed on him by law and particularly his obligation to exercise his fact-finding powers in acting on findings. I have no hesitancy in saying that military commanders know they should not affirm findings of guilt unless they personally believe that the evidence established the guilt of the accused beyond a reasonable doubt. The law so provides and, absent any showing in the record to the contrary, I am willing to presume they have been informed about and know the law and the duties of their office. Furthermore, I believe they are well versed and thus cognizant of the military and legal principle that their discretion is unfettered by the views of their subordinates.