UNITED STATES, Appellee

v

CLAYTON EDWARD SCAIFE, Private, U. S. ARMY, Appellant

No. 28,216

November 22, 1974

*Captain Michael L. Quirk* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Lieutenant Colonel Edward S. Adamkewicz, Jr., Major H. M. Hougen,* and *Captain John Howard Shows.*

*Captain Steven M. Werner* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain Joel M. Martel, Captain Hugh W. Brenneman, Jr.,* and *Captain Robert C. Roth, Jr.*

## OPINION OF THE COURT

FERGUSON, Senior Judge:

Tried before a special court-martial composed of members in Wurzburg, Germany, the appellant was convicted, contrary to his pleas, of various offenses including absence from his appointed place of duty (three specifications), a failure to go to his appointed place of duty, the wrongful communication of a threat to a first lieutenant, and the robbery of $27 from a fellow serviceman, all in respective violation of Articles 86, 122, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 922, and 934. The court's findings and its adjudged sentence to a bad-conduct discharge and confinement at hard labor for 6 months remain unchanged throughout review below.

We granted review in this case to consider the sole question of whether the staff judge advocate's post-trial review was prejudicially misleading and defi-

cient insofar as it pertained to his summary and analysis of the evidence presented at trial with respect to the identification of the appellant as a perpetrator of the robbery, which is clearly the most serious offense of which he was convicted.

At trial the Government sought to establish the appellant's guilt of the robbery by the testimony of the alleged victim, a Specialist Melton, as well as by the testimony of two German civilian police officers. The Government did not attempt to have Specialist Melton identify the appellant in court, however, because of an earlier ruling by the military judge that a pretrial identification of the appellant by the victim at a military police station shortly after the incident was the result of an improper line-up procedure. The prosecution instead relied upon the testimony of the two German police officers in seeking to prove the identification element of its case.

In testifying that $27 was forcibly taken from his wallet by two individuals, one of whom had pointed a pistol at his head while he was a passenger on a train waiting to depart the station, Specialist Melton only provided the court with a general description of his two assailants. He described one of the two assailants as a tall, black American serviceman dressed in fatigues, wearing a silver arm bracelet with a "power fist"; he portrayed the other having the pistol as likewise being black, apparently an American because he spoke English, who was wearing a light yellow sweatshirt and holding a black beret in his hand. Exiting the train immediately after his money was taken, Specialist Melton observed his two assailants talking to a conductor about three cars away. He then ran into the waiting room of the station and screamed for the police. Two German police officers on duty at the station responded to the call, and after Specialist Melton had explained to them what had happened, they proceeded together to the train where Specialist Melton pointed out the two individuals who earlier had robbed him. The two men were subsequently apprehended and taken to a German police station.

Testifying through an interpreter, each of the two German police officers related substantially the same story concerning the apprehension, including a general description of the two individuals. But both officers were unable to make an in-court identification of the appellant as one of the individuals so apprehended. One of the police officers did testify, however, that the two apprehended individuals were later taken to a military police station, where military identification cards were taken from them. Although relating that he then copied into a notebook the name and social security number of each individual from those military identification cards, the officer later admitted under questioning from the court that he had not compared the faces of the two accused robbers with the photographs depicted on each of the respective identification cards. The notebook, which was subsequently admitted into evidence at trial without objection as past recollection recorded, revealed the name and social security number of the appellant, Private Clayton E. Scaife, as one of the perpetrators as well as the name and social security number of a Private First Class John Ramsey as the other one possessing the pistol.

In his post-trial review, the staff judge advocate, after setting the time and place of the alleged robbery, purported to summarize the combined testimony of these three prosecution witnesses in the following manner:

[Melton] was awakened by Scaife who asked him if he could spare some money for a ticket. Melton . . . offered it to Scaife who took the money and departed only to return a few minutes later with Ramsey. The latter asked Melton if he could give him some money . . . and drew a pistol pointing the barrel at Melton's head. . . . Scaife . . . was standing in the aisle "looking in both directions." . . . Ramsey apparently uncovered Melton's wallet in a search. From it he took . . . [$27]. He then threw the wallet on the seat and left with Scaife. Melton then departed the train and seeing Ramsey and Scaife with the conductor about three cars away ran into the waiting room and screamed: "Police." He then explained what had happened to the

**235**

two police . . . and they returned with him and apprehended Ramsey and the accused.

Later in the post-trial review when commenting upon the sufficiency of the evidence to support the appellant's robbery conviction, the staff judge advocate stated:

The evidence outlined . . . above satisfies the elements . . . [and] indicates that Scaife helped and encouraged Ramsey at least by serving as lookout. My examination of the record convinces me that the verdict was correct.

On appeal, appellate defense counsel assert that the appellant was prejudiced by the apparent discrepancies between the evidence as actually presented at trial with respect to identification and that as now reflected in the post-trial review. They first claim that the review was misleading by implying in its recitation of the evidence that the victim of the robbery, Specialist Melton, had actually identified the appellant in court as one of the perpetrators of the alleged crime. Maintaining that the testimony of the two German police officers was substantially exculpatory, moreover, counsel for the appellant also complain about the staff judge advocate's failure to make any specific reference to the contents of their testimony. Counsel for the government, on the other hand, respond that the staff judge advocate's use of the appellant's name, both in his summary of the evidence and his conclusion on the sufficiency thereof, was for narrative convenience and descriptive purposes only and was not designed to imply that Specialist Melton had identified the appellant by name as his assailant. They further submit that the omission by the staff judge advocate of any discussion of the testimony of the two German police officers was harmless since it did not exonerate the appellant but only established his identity by other means.

To a certain extent, both sides rely upon our decision in *United States v Samuels*, 22 USCMA 238, 46 CMR 238 (1973), as support for their respective positions. In that case, like the one at bar, the only issue really contested at trial was the identification of the accused. What we said there regarding the contents of a post-trial review bears repeating here:[1]

While the staff judge advocate must necessarily be selective in summarizing evidence for inclusion in his post-trial review, he must set out all items of proof that may have a substantial influence on the decision of the convening authority. United States v Fields, 9 USCMA 70, 25 CMR 332 (1958). Omission of important testimony relating to a key issue in the case is reversible error. United States v Collier, 19 USCMA 580, 42 CMR 182 (1970). A review that is incomplete or misleading on an important point is unacceptable. United States v Cruse, 21 USCMA 286, 45 CMR 60 (1972); United States v Hooper, 9 USCMA 637, 26 CMR 417 (1958).

Because the staff judge advocate in *Samuels* had completely omitted from his post-trial review any mention of the testimony of a material defense witness who had refuted the testimony of a prosecution witness upon whom the identification of the accused as the perpetrator of a robbery had depended, we found that the staff judge advocate had abused his discretion by failing to include such testimony in his review.

The Government would now attempt to distinguish *Samuels* from the factual situation obtaining in the case at bar, however, by contending that while the staff judge advocate's omission in *Samuels* may have substantially affected the convening authority's action had that omitted testimony been believed by him, the appellant here would not have been benefited by any discussion in the post-trial review of the means by which his identity was otherwise established. Even though we agree with the Government to the extent that the omitted testimony of the two German police officers was not, as has been suggested by the defense, substantially exculpatory, particularly in view of the fact that it corroborated the general identification by the victim and also provided a foundation for the introduction of the notebook, we

_____

[1] United States v Samuels, 22 USCMA at 239, 46 CMR at 239.

are unwilling to hold that any discussion of that evidence need not have been included in the post-trial review. The question presented by this appeal does not involve the legal sufficiency of the evidence presented by the Government on the robbery offense to sustain the court-martial's finding of guilt, but rather, whether the convening authority himself should have been allowed to evaluate that evidence in its proper perspective in order to determine the guilt or innocence of the accused.

Although the appellant did not elect to introduce any evidence at trial regarding the robbery offense, his trial defense counsel did cross-examine the prosecution witnesses with respect to identity and strenuously argued to the court before findings that the prosecution's evidence as to that element of proof was lacking. Trial defense counsel thus stressed the fact that none of the prosecution's witnesses had been able to identify the appellant in court as one of the perpetrators of the robbery and sought to minimize the effect of the appellant's name copied in the police officer's notebook by drawing attention to the fact that the officer recording that information had not compared the photographs on the seized identification cards with the actual faces of those whom he apprehended.

What particularly concerns us here is the fact that the staff judge advocate gave absolutely no indication in his post-trial review, even by way of inference, that the identification of the appellant as one of the robbery perpetrators had been raised at trial and contested by the defense. In neither his summary of the evidence nor his later analysis of its sufficiency did the staff judge advocate make any reference to the fact that none of the Government's witnesses, including the victim, were able to physically identify the appellant as one of the two robbers. By omitting any reference to the testimony of the two German police officers, he likewise nowhere disclosed how that identity had otherwise been established. Although noting elsewhere in his review, under the discussion of the motions raised at trial, that a defense motion to suppress an in-court identification of the appellant had been granted by the military judge, the staff judge advocate did not indicate either the offense or the specific witness to which that motion had pertained.

While we might, under other circumstances, find that a staff judge advocate's mere use of an accused's name for narrative convenience or descriptive purposes would be entirely appropriate in a post-trial review for his summarization and evaluation of the evidence presented at trial, we do not, without anything more, find it acceptable in a case such as this where the identity of the accused had been placed directly in issue and litigated at trial. As we recently reiterated in *United States v Smith,* 23 USCMA 98, 99, 48 CMR 659, 660 (1974):

> This Court has long held that the staff judge advocate's post-trial review must fairly summarize the evidence on both sides of an issue and provide the convening authority with adequate guideposts by which to determine anew the guilt or innocence of the accused.

The decision of the United States Army Court of Military Review is reversed and the action of the convening authority is set aside. The record of trial is returned to the Judge Advocate General of the Army who may order a new post-trial review and action by a different convening authority.

Judges Quinn and Cook concur.